IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

KENNETH MOORE,                        )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )   Case No.: 1:18-cv-768-WC
                                      )
ANDREW SAUL,[1]                       )
Commissioner of Social Security,      )
                                      )
        Defendant.                    )

## MEMORANDUM OPINION

## I.    INTRODUCTION

Kenneth Moore ("Moore" or "Plaintiff") filed a Title II application for a period of disability and disability insurance benefits and a Title XVI for supplemental security income on August 25, 2015, alleging disability beginning on February 15, 2014. R. 10, 160–69. The application was denied at the initial administrative level. R. 107–16. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on August 16, 2017. R. 50, 117–22. Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review on March 12, 2018. R. 1–3, 7–9. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[2] *See Chester v.*

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* §205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).
[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

*Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review of that decision under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 10); Gov't's Consent to Jurisdiction (Doc. 9).  After careful scrutiny of the record and the parties' briefs, and for the reasons herein explained, the Court REVERSES the Commissioner's decision and REMANDS the matter with instructions to the ALJ for a proper evaluation under the three-part pain standard as it applies to the Plaintiff.

## II.    STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as

adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence*." Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption

that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

## III.    STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.   Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).  Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  See 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1)     Is the person presently unemployed?

(2)     Is the person's impairment(s) severe?

(3)     Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4)     Is the person unable to perform his or her former occupation?

(5)     Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4.

At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV. ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-nine years old on the date of the hearing before the ALJ. R. 22. Plaintiff has a high school education. R. 22. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since February 15, 2014, the alleged onset date[.]"

R. 12.  At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "degenerative disc disease, degenerative joint disease, and affective disorder." R. 12.  At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" R. 13.  Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform light work [. . .] except that he can occasionally stoop; can perform no work around heights or hazards; is limited to the performance of simple routine tasks with simple work-related decisions; can occasionally interact with supervisors, co-workers, and the public; and can respond appropriately to gradual changes in a routine work setting.

R. 15.  At Step Four, having consulted with a VE, the ALJ concluded that Plaintiff "is unable to perform any past relevant work." R. 21.  The ALJ next concluded, at Step Five, that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. 22.  Based upon the testimony of the VE, the ALJ identified the following as representative occupations: "mailroom clerk," "parking lot attendant," and "advertising material distributor." R. 22.  Accordingly, the ALJ concluded that Plaintiff "has not been under a disability [. . .] since February 15, 2014, through the date of this decision." R. 23.

## V.    PLAINTIFF'S CLAIMS

Plaintiff presents three issues for the Court to consider in its review of the Commissioner's decision: (1) "Whether the ALJ erred by failing to accord weight to the

opinion of the treating orthopedic surgeon Dr. Maddox;" (2) "Whether the ALJ's finding

of Mr. Moore's residual functional capacity is not based on substantial evidence;" and (3)

Whether the ALJ failed to properly apply the pain standard." Doc. 14 at 1.

## VI.    DISCUSSION

Although Plaintiff raises three issues on appeal, since the court's decision related

to the pain standard is dispositive, the court confines its review to the ALJ's application

of the pain standard.[3]

The United States Court of Appeals for the Eleventh Circuit has articulated its

"pain standard" governing the evaluation of a claimant's subjective testimony about pain,

as follows:

> In order to establish a disability based on testimony of pain and other
> symptoms, the claimant must satisfy two parts of a three-part test showing:
> (1) evidence of an underlying medical condition; and (2) either (a) objective
> medical evidence confirming the severity of the alleged pain; or (b) that the
> objectively determined medical condition can reasonably be expected to
> give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). "Thus, the ALJ must

determine: first, whether there is an underlying medically determinable impairment that

could reasonably be expected to cause the claimant's pain or other symptoms; and

second, the intensity and persistence of the symptoms and their effect on the claimant's

---

[3] It is clear from the record that the ALJ does not explicitly set forth the weight given to each of Plaintiff's treating physicians' opinions; however, the court is not certain that this error would be fatal due to the fact that the ALJ thoroughly set forth the records of each treating physician. Although the court pretermits discussion on the additional issues raised since the court is remanding on other grounds, out of an abundance of caution, the ALJ is instructed to conspicuously assign weight to all of Plaintiff's treating physicians' opinions.

work." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 765 (11th Cir. 2014) (citing 20 C.F.R. § 416.929(a), (c)). The ALJ evaluates the "claimant's subjective testimony of pain" only after the claimant satisfies the first prong and one of the alternate portions of the second prong of the pain standard. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

The Eleventh Circuit has explained that, "in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Id.* at 1561. Importantly, it is only evidence of the underlying condition which could reasonably be expected to cause pain, not evidence of actual pain or its severity, which must be presented by the claimant to satisfy the "pain standard." *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991); *see also Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir. 1986); *Hill v. Barnhart*, 440 F. Supp. 2d 1269, 1272–73 (N.D. Ala. 2006). After determining that a claimant satisfies the pain standard, the ALJ must then proceed to consider the claimant's subjective testimony about pain. The ALJ's decision to reject or discredit such testimony is reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If the ALJ finds the claimant's subjective testimony not credible, the ALJ "must articulate explicit and adequate reasons for doing so," and failure to do so "requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225.

The record is replete with documentation of Plaintiff's allegations of pain and corresponding physician treatments. At the hearing before the ALJ, Plaintiff testified

about pain stemming from his back injury which affects his ability to perform work. R. 56. Plaintiff described the constant pain in his back and both legs that gets worse at times. R. 57–58. He testified that he can walk, stand, or sit continuously for only about thirty to forty-five minutes and cannot walk further than about one hundred yards. R. 59–60. Plaintiff further testified about measures, including alternating sitting and standing and postural shifts, that he employs to alleviate pain. R. 59–60. He testified that he is unable to assist with chores or housework, unable to drive safely due to numbness in his legs and feet, unable to participate in his former hobbies and interests such as hunting and fishing, and requires assistance from his son to take a bath or shower. R. 62–63. Finally, the Plaintiff testified that the pain is not alleviated with the use of pain medication. R. 56–57.

In this case, the ALJ properly stated the standards governing her evaluation of Plaintiff's subjective pain testimony and cited to 20 C.F.R. § 404.1529, "which contains the same language regarding the subjective pain testimony that [the Eleventh Circuit] interpreted when initially establishing its three-part pain standard." *Wilson*, 284 F.3d at 1225. The ALJ found that Plaintiff suffers from the following severe impairments: "degenerative disc disease, degenerative joint disease, and affective disorder." R. 12. The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but the "Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms

are not entirely consistent with the medical evidence and other evidence in the record." R. 15. Accordingly, the ALJ was required to "articulate specific reasons for questioning the claimant's credibility" and those reasons must be supported by substantial evidence.

The ALJ determined that the record supports a finding that Plaintiff suffers from, *inter alia*, degenerative disc disease and degenerative joint disease. R. 12. It is evident to the Court that Plaintiff has at least initially passed through the gateway function of the "pain standard." Clearly, there is "evidence of an underlying medical condition." The ALJ recognized as much. R. 12. The court also finds that Plaintiff's "objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225. Again, it is important to note that, at this juncture, Plaintiff is not required to provide objective evidence of the pain itself. *Elam*, 921 F.2d at 1215. Rather, Plaintiff must simply provide objective medical evidence that his underlying medical condition(s) could reasonably be expected to cause his pain. There is sufficient objective medical evidence in the record to support this conclusion.

For instance, following Moore's back and wrist injury that occurred during National Guard duty, his October 18, 2013, MRI at Lyster U.S. Army Community Hospital revealed that "[t]here is a small tear in the annulus centrally at the L5-S1 level" as well as a "very mild broad-based disc bulge," which was subsequently diagnosed as a "L5-S1 annular tear with left lower extremity radiculopathy." R. 335, 342–43, 559–60, 660. On January 15, 2014, Dr. Patrick D. Gain, MD, noted that annular tears "tend to be

fairly painful" and discussed the option of surgery, but Moore stated he would prefer to avoid surgery, if possible. R. 363, 488. Dr. Gain agreed that attempting conservative care was the best option at that time and restricted him from performing his military duties. R. 363, 488.

On March 5, 2014, Moore reported 8/10 pain level, and Dr. Jeremiah Maddox referred him for a L5-S1 epidural and noted that Moore has had midline epidurals in the past. R. 360, 487. On March 19, 2019, Dr. Maddox diagnosed Moore with "Left lower extremity radiculopathy" and unsuccessfully attempted a L5-S1 foraminal, but he "changed to an L5 selective nerve root block" mid-procedure. R. 344, 444. On April 21, 2014, Dr. Maddox noted continued pain with lack of success with injections. R. 358. Moore reported that he is "desperate at this point to have something done, and really wants to get back to work." R. 358. Dr. Maddox recommended discectomy but emphasized that "it is possible that he won't get improvement." R. 358.

On May 23, 2014, Dr. Maddox performed a discectomy "[a]fter a long trial of conservative care." R. 342, 442–43. On June 4, 2014, Moore returned to Dr. Maddox with complaints of severe headaches, nausea, and vomiting, which resulted in another surgery due to an infection of the surgical wound. R. 340–41, 528–29. On July 28, 2014, Moore reported that he was doing "0% better, 5/10 pain." R. 355. Dr. Maddox stated that Plaintiff is "having some issues with walking long distances and things based on some left leg 'dead leg' sensation" and stated that he will keep Moore out of work "for now."

R. 355. On August 28, 2014, Dr. Maddox noted some improvement in pain on Moore's left side but that he has "[o]ngoing radicular symptoms," and he prescribed medication. R. 350. The MRI revealed degenerative changes at L5-S1 but "no other significant abnormalities seen." R. 351–52. On September 9, 2014, Dr. Maddox performed a "[l]eft L5 root block" and diagnosed Moore with "[l]umbar stenosis with radiculopathy." R. 339.

On October 29, 2014, Moore returned to Dr. Maddox for a follow-up and reported some improvement since surgery, but he was still having right leg and right and left buttock pain at a 7/10 pain level. R. 348, 478. Dr. Maddox noted that he does "not think he is ready to go back to work," and that he appears depressed stemming from his inability to return to work. R. 348. Dr. Maddox cleared Moore for "some sedentary duty," with a plan to check him again in eight weeks to determine if he can return to work. R. 348. On December 29, 2014, Dr. Maddox noted L5-S1 is an "ongoing problem," found scar tissue around the left S1 nerve root, and stated that Moore has "bilateral radiculopathy which is recalcitrant to conservative measures." R. 347, 447. Dr. Maddox also noted that Plaintiff reported 7/10 pain level and that "[a]t this point, he would like to have something done about this," but that "[t]he only thing that I see that is feasible besides continued conservative care would be a fusion at this level with likely a right-sided TLIF, as that should be the side without the scar tissue." R. 347.

Dr. Maddox scheduled a lumbar fusion for January 23, 2015; however, Moore changed insurance providers and was referred to Dr. N. Garret Powell, Civ, MD. R. 476, 603; Doc. 14 at 9–10. On March 26, 2015, Dr. Powell reviewed Moore's MRI and noted "quite extensive scar tissue at the previous operative site of L5-S1 with loss of interspace height as well." R. 585–87. Dr. Powell noted that conservative treatments, such as physical therapy and lumbar epidural steroid injections, did not improve Moore's pain, and "[g]iven the extent of the scarring and compression at L5-S1," Dr. Powell admitted Moore to the hospital for "surgical treatment of his lumbar radiculopathy" in the form of a "complete discectomy (at L5-S1) with interbody fusion and instrumentation." R. 585–86. Dr. Powell stated that he was "cautiously optimistic this will improve the patient's pain" and explained "there can be no guarantees." R. 587. The lumbar discectomy L5-S1 (bilateral) and fusion was performed on March 30, 2015. R. 625–26.

On May 12, 2015, Moore attended physical therapy and reported improvement from his preoperative state after his third spinal procedure; however, he continued to have back pain and pain in his lower extremities, with the right being greater than the left. R. 572–73. On June 9, 2015, Dr. Powell noted that Moore was still experiencing "quite significant low back pain with some right leg pain." R. 432. Dr. Powell referred Moore to physical therapy, which he began, but was unable to continue "due to the costs associated with the treatment." R. 432. Dr. Powell stated he was "not optimistic" that Moore could return to National Guard duty and referred Moore to a pain management

program. R. 432.  On July 23, 2015, Moore returned to Dr. Powell for a routine follow-up of his lumbar radiculopathy, approximately four months after his "posterior lumbar interbody fusion at L5-S1." R. 428–29.  Dr. Powell noted that Moore is "still experiencing significant low back pain with left leg pain," as well as right leg numbness, and it is "severe enough that it prevents him from executing any of his duty activities in the National Guard." R. 429.  Dr. Powell was "optimistic" that physical therapy "can at least reduce some of his left leg pain," although he noted that Moore had not returned to physical therapy yet. R. 429.  Dr. Powell opined that "[i]t remains my medical opinion that the patient cannot meet the fitness and duty requirements for National Guard service due to his lumbar radiculopathy. I do not anticipate that he will make a good enough recovery to ever be able to return to active-duty/National Guard service." R. 429.

On September 3, 2015, Moore complained of numbness in his right foot, low back pain, and episodic left hip pain, which had "improved as compared to preoperatively, but it still limits his activities." R. 563.  Dr. Powell stated that "[i]t remains my medical opinion that the patient is not able to meet the requirements of active duty military service due to his lumbar radiculopathy. This condition is permanent." R. 563.  On October 13, 2015, Moore called into the orthopedic's office to obtain a refill of his pain medication and indicated without the medication, his pain level is a 10/10, but 6/10 with medication. R. 710, 712.

On December 1, 2015, Moore was seen at the Pain Management Center with complaints of continued lower back pain that radiates into his buttock and left hip and down his right leg. R. 805. Dr. David H. Evans, MD, reviewed Moore's completed questionnaire which indicated an overall average of a 7/10 pain level, and upon examination found "generalized tenderness in the MIDLINE lumbosacral junction area. Lumbar Hexion, extension and lateral flexion restricted. There are well healed scars consistent with previous surgeries listed." R. 805. Dr. Evans directed Moore to get a new primary care physician and to return to complete a "work up." R. 805.

On February 4, 2016, Moore returned to Dr. Powell for a follow-up. R. 824. Dr. Powell noted that the x-rays of the fusion appeared "to be maturing nicely at this level," but he also noted that Moore "continues to experience lumbar radiculopathy causing low back pain with right leg pain." R. 824. Dr. Powell stated that Moore "has been referred to Pain Management, but the authorization appears incomplete in that when he reported to that facility, the providers required a much greater out of pocket payment than would otherwise be expected with Tri Care. He is attempting to rectify this currently." R. 824. Dr. Powell concluded that "[i]t remains my medical opinion that he is not able to return to active duty service due to his lumbar radiculopathy. It is also my opinion that he will not be able to return to meaningful employment due to his lumbar injury and radiculopathy." R. 824.

Finally, on March 1, 2017, Moore was examined by Dr. John T. Friedland who found that the "[l]ow back demonstrates tenderness to palpation at the base of his lumbar spine." R. 827. Moore reported constant pain with a 10/10 pain level at its worst, with a report of 7/10 on the date of the appointment. R. 826. Moore stated that the pain increases with activity and decreases with rest, and that he is "otherwise very active except for increasing pain." R. 826. Dr. Friedland noted that Moore "is able to forward flex at his hips and has back pain at the end range of motion. Positive Kemp's maneuver with extension. Lateral bending causes pain. Simulated rotation is without pain." R. 827.

Plaintiff has had multiple lumbar surgeries and has a long history of treatment with powerful pain medications, including Percocet and epidural steroid injections, in efforts to treat his pain. The medical records related to his lumbar radiculopathy are rather extensive from the date of the injury until his present application. The medical records consistently indicate that despite modest successes with his pain decreasing from his preoperative state following each surgery, the pain persists, is consistent, and is severe. Not a single medical record indicates that the physicians/specialists did not find Plaintiff's complaints of severe pain to be credible. While the evidence does establish some improvement since his May 30, 2015, surgery, they clearly specify that the improvement is over his preoperative state, and none of the records indicate an absence of credible severe pain symptoms. Thus, Plaintiff's medical history suggests a real and concerted effort to alleviate his substantial pain. The sum of this objective medical

evidence, including evidence of lumbar radiculopathy, affecting his lower back, hips, and both lower extremities; degeneration disc disease; and degenerative joint disease compels the conclusion that Plaintiff's condition(s) could reasonably be expected to cause the pain Plaintiff alleges.

Numerous reasons given by the ALJ for finding the Plaintiff's pain non-disabling are unsupported. For example, as part of the credibility finding, the ALJ stated that "[a]fter considering the overall record, the undersigned cannot ignore that the claimant did not obtain ongoing pain management or significant primary care intervention for pain, despite apparent access to medical care." R. 19. However, it is clear from the record that upon referral to Pain Management Center, Plaintiff did seek treatment on December 1, 2015. R. 805. During a follow up visit, Dr. Powell noted that Plaintiff "has been referred to Pain Management, but the authorization appears incomplete in that when be reported to that facility, the providers required a much greater out of pocket payment than would otherwise be expected with Tri Care. He is attempting to rectify this currently." R. 824. Similarly, following Plaintiff's referral to physical therapy, his medical records indicate that the orthopedics' office called Moore in May of 2015 because his insurance indicated that he is not eligible for physical therapy. R. 575. It appears a discussion took place regarding whether there are any physical therapists in his area that are covered by his insurance, as well as a discussion about attempts to reinstate his Tricare Prime Select coverage. R. 575. During Plaintiff's next appointment, Dr.

Powell noted that Plaintiff was unable to continue physical therapy "due to the costs associated with the treatment." R. 432. Upon referral to physical therapy and pain management, Plaintiff was fully compliant and attended his appointments; however, he was unable to afford continued treatment after his insurance denied coverage of both treatments. R. 432, 824.

The Eleventh Circuit has consistently held that a claimant is excused from noncompliance when there is an inability to afford the prescribed treatment:

> We agree with every circuit that has considered the issue that poverty excuses noncompliance. *See, e.g., Lovelace,* 813 F.2d at 59 ("To a poor person, a medicine that he cannot afford to buy does not exist"); *Lovejoy v. Heckler,* 790 F.2d 1114, 1117 (4th Cir.1986) (failure to follow prescribed treatment does not preclude reaching the conclusion that a claimant is disabled when the failure is justified by lack of funds); *Dover v. Bowen,* 784 F.2d 335, 337 (8th Cir.1986) ("the ALJ must consider a claimant's allegation that he has not sought treatment or used medications because of lack of finances"); *Teter v. Heckler,* 775 F.2d 1104, 1107 (10th Cir.1985) (inability to afford surgery does not constitute an unjustified refusal and does not preclude recovery of disability benefits). Thus while a remediable or controllable medical condition is generally not disabling, when a "claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986) (footnote omitted).

*Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). The ALJ bears the burden of proving that the noncompliance was unjustified. *Id.* Here, the ALJ failed to discuss the clear reference to Plaintiff's financial inability and difficulties with insurance coverage, which made it difficult to obtain pain management and physical therapy treatment.

Additionally, the ALJ consistently emphasized that the Plaintiff was "released *without limitations*," upon review of each physicians' records. *See* R. 16–18 (emphasis in original). However, the court does not find a single reference in the medical records that any physician explicitly released Plaintiff "without limitations." Instead, it appears that the ALJ is relying on the physicians' silence on the issue. In *Clyburn v. Commisioner, Social Security Administration*, the ALJ "noted that 'Dr. Torres did not offer any limitations or restrictions on the claimant's activities of daily living and his opinion was given great weight.'" 555 F. App'x 892, 894 (11th Cir. 2014). "When a doctor's silence about a claimant's ability to work is subject to competing inferences, we have stated that no inference should be drawn from that silence." *Id.* (citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)). Therefore, it was improper for the ALJ to place such a large emphasis on this issue when the physicians were, at best, silent. However, this assertion is not entirely borne out by the record considering that Plaintiff's medical records indicate multiple instances in which three different treating physicians restricted Plaintiff's work activities. Initially, Plaintiff was restricted to sedentary work, then completely restricted from returning to active-duty/National Guard service or his regular employment with the city on a temporary basis, and ultimately, a medical opinion that he is permanently unable to return to military service or meaningful employment. R. 348, 363, 429, 488, 563, 824.

The court finds that Plaintiff's testimony is consistent with the opinions of his physicians and is not contradicted by any findings in the medical records. Therefore, to the extent the ALJ held that Plaintiff's subjective pain testimony is not credible, such decision is not supported by substantial evidence and is due to be reversed and remanded. Accordingly, this matter is due to be reversed and remanded so that the ALJ may reconsider his rejection of Plaintiff's pain testimony. *Cavarra v. Astrue*, 393 F. App'x 612, 616 (11th Cir. 2010) (reversing and remanding where "ALJ's credibility determination is not supported by substantial evidence and therefore must be set aside").[4]

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is not supported by substantial evidence or a proper application of the law. Accordingly, this case will be **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this opinion. A separate order will be entered.

Plaintiff is cautioned, however, that this Memorandum Opinion does not suggest Plaintiff is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004). A separate judgment will issue.

---

[4] Because the Court orders reversal and remand on the basis of this issue, the Court does not consider whether the ALJ erred with respect to Plaintiff's other contentions.

DONE this the 30th day of August, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE